Dixie Roblek LeBRETON, Plaintiff and Respondent,

v.

Thomas Edward LeBRETON, Defendant and Appellant.

No. 15923.

Supreme Court of Utah.

Nov. 20, 1979.

Don Blackham, Salt Lake City, for defendant and appellant.

Thomas P. Vuyk, Salt Lake City, for plaintiff and respondent.

WILKINS, Justice:

Defendant appeals from an order of the District Court which equally divided the equity in certain real property between plaintiff and defendant as of the date of their divorce.

On April 28, 1969, plaintiff sued for divorce. The parties entered into a stipulation providing for the division of the subject property and the same was accepted and approved by the Court. The pertinent portion thereof reads as follows:

> With regard to the house, it will be sold upon her remarriage or when the home is no longer needed for the minor children, at which time *the home will be sold and the equity as of the date of the divorce will be divided equally among the parties with the further stipulation that the Plaintiff shall have all of the principal payment made by her after the date of the divorce before the costs of sale and then the remaining equity will be divided equally.* [Emphasis added.]

In June of 1977, defendant filed an affidavit in support of an order to show cause why the house should not be sold and the proceeds therefrom distributed according to the provisions of the decree. Plaintiff had remarried in the interim and the children had both reached the age of majority. A hearing was held on April 14, 1978. The District Court ordered that the equity of the home be divided "by sale or buy-out" according to its value at the time of the divorce nine years earlier. It is specifically from this order that defendant appeals.

The single claim on appeal by defendant is that the District Court misconstrued the

terms of the decree of divorce, and that properly read, the above-quoted language mandates a division of the equity *as of the time of the sale* (after subtracting principal payments made by plaintiff after the original divorce decree). The plaintiff argues contrarily, contending that the time of divorce controls the date that this division shall occur. The difference such an interpretation would make in the portion of the proceeds going to defendant would be substantial, as the equity in the home has been enhanced markedly by the dramatic increase in property values in the area during the past decade.

The District Judge verbally stated at this hearing:

Well, I have heard the statements of both of you that you would both testify, if you were to take the stand . . . to a different interpretation of this paragraph. . . . So, I think it would be a standoff as far as the testimony is concerned . . . but I think that with that wording in there, "the equity as of the date of this divorce," I think that has got to tip the balance and I think that is what we are talking about. That is what I hold . . . it was the equity as of the date of the divorce. ·

The District Court also stated in its Findings and Conclusions in this hearing:

The Court finds that though ambiguous the meaning of the decree is that the equity as of the date of the divorce would be the value to be divided among the parties.

Additionally, the attorney for plaintiff, who prepared the Findings, Conclusions, and Decree in the original divorce action, noted initially in this opinion, conceded in the hearing in 1978 that there was an ambiguity, and the attorney for defendant also—in essence—in this 1978 hearing acknowledged a basis for two interpretations.

We agree that there is ambiguity, and conclude that we should remand for an evidentiary hearing for the purpose of determining what is reasonable and necessary to do *now*, pursuant to Utah Code Annotated,

Section 30–3–5, 1953, as amended, which provides in relevant part:

When a decree of divorce is made, the court may make such orders in relation to the children, property and parties, and the maintenance of the parties and children, as may be equitable. *The court shall have continuing jurisdiction to make such subsequent changes or new orders with respect to* the support and maintenance of the parties, the custody of the children and · their support and maintenance, or *the distribution of the property as shall be reasonable and necessary.* [Emphasis added.]

Of course, we would *ordinarily* remand this matter to the District Court for the purpose of taking evidence of pertinent circumstances, including intent of the parties, at the time of the original divorce, but the record before us discloses that such a procedure would be useless here as there was no meaningful evidence, even that was proffered, at the 1978 hearing that would be probative. Hence, we remand, in this unusual case, for an evidentiary hearing under § 30–3–5, where findings can be made on the basis of present circumstances.

Reversed and remanded for further proceedings consistent with this opinion. No costs awarded.

CROCKETT, C. J., and MAUGHAN and STEWART, JJ., concur.

HALL, Justice (dissenting):

I respectfully dissent.

My first concern is that the majority opinion would remand for an evidentiary hearing for the purpose of determining what is "reasonable and necessary" in light of the present circumstances of the parties.[1] Defendant sought no such relief below and does not urge it on this appeal. In any event, I do not deem him entitled to such relief because I view the narrow issue presented not as one in equity, but as one in contract.

---

1. Pursuant to the continuing jurisdiction provisions of U.C.A., 1953, Sec. 30–3–5.

It is fundamental, that in order for a court of equity to assume jurisdiction, there must be grounds for equitable relief presented.[2] Also the merit of a claim for equitable relief is dependent upon a showing of ability to have prevented the prejudicial situation in which the litigant finds himself.[3] In the instant case, just the opposite is true. Defendant chose to contract away certain of his rights in property and cannot now be heard to seek equity.

I am constrained to note that if matters of this type are to be viewed as within the continuing jurisdiction of the court, any litigant, once satisfied with a stipulated divorce settlement, but becomes disenchanted therewith because of a change in market values, (*up or down*), need only appeal to the court to give him a second chance by way of reformation. Such is not the law of contracts and should not be the law of "equity" as it pertains to decrees of divorce which divide property based upon stipulations.

It is noteworthy that the majority cites no precedent for its holding and, indeed, there appears to be none. While this Court has not directly ruled upon the issue here under discussion, in the case of *Callister v. Callister*[4] the Court clearly recognized the sanctity of *property* settlements as distinguished from *alimony* settlements. In doing so, the California case of *Hough v. Hough*[5] was cited and the following was excerpted therefrom:

"This does not mean that payments under property settlement agreements may be modified even though incorporated in the decree. They may not. (Citing cases.) But in such a situation there is not the same underlying policy. *The settlement of property rights should be final in order to secure stability of titles: Support allowances on the other hand should be subject to the discretion of the court as justice may require. . . .* It has been loosely stated generally in passing that the divorce court has no jurisdiction to modify a decree based upon a property settlement agreement. (Citing cases, including *Ettlinger v. Ettlinger*, 3 Cal.2d 172, 44 P.2d 540 supra.) However, that does not mean that the court does not have jurisdiction on an application for modification to decide correctly or incorrectly *whether the decree is based upon a property settlement agreement, and is not subject to modification, or is based upon alimony or support allowance covenants, and is subject to modification.*" [Emphasis added.]

My next concern pertains to the confused interpretation the majority opinion places on the original divorce decree. At trial, the parties were in accord that the mortgage payments made by plaintiff from and after the date of the divorce were to be deducted from the house equity before it was to be divided. Hence, the sole issue presented was whether their agreement provided for a division of equity as of the date of the divorce or as of the date the property is sold. Consequently, the sole issue presented by this appeal is whether or not the trial court's interpretation of the decree was proper. I deem it was.[6]

The stipulation of the parties, as accepted by the court and incorporated in the decree of divorce, plainly, and without ambiguity, provides for a division of the equity in the house "as of the date of the divorce" and further provides "that the Plaintiff shall have all of the principal payment made by her after the date of the divorce before the costs of sale and then the *remaining equity* will be divided equally." [Emphasis added.]

**2.** 27 Am.Jur.2d, Equity, Sec. 19.

**3.** Id., Sec. 1.

**4.** 1 Utah 2d 34, 261 P.2d 944 (1953).

**5.** 26 Cal.2d 605, 160 P.2d 15 (1945).

**6.** Although the trial judge referred (perhaps inadvertently) to the decree of divorce as "ambiguous," I am not of the opinion that any ambiguity exists therein. In any event, even assuming there was ambiguity, the judge resolved it in favor of plaintiff on the basis of the evidence before him which included the proffer of proof made by each party and the matter should be left at rest.

The stipulation formed a binding, legal contract, clear on its face, which should be interpreted as a matter of law, and in accordance with its terms.[7] Basic rules of interpretation of a written document such as this require that it be read so that its own terms are consistent.[8] The "remaining equity" necessarily refers to the already established "equity at the time of the divorce" as clearly stated in the decree. Any other interpretation would distort the literal language of the decree.

Admittedly, the agreement reached by the parties in settling their differences at the time their divorce was granted *appears* to be weighted in favor of plaintiff since it assures her the return of all mortgage payments made after the date of the divorce *plus* one-half of the remaining equity as of the date of the divorce; yet it is not for the courts to question the wisdom of a contract made by the parties. On the other hand, we are not aware of what other matters were considered by the parties when they made their compromise. Defendant may very well have received other consideration which prompted his agreement such as concession made in regard to alimony, support, or the division of other property.

The stipulation of the parties is clear and unequivocal and should therefore not be subjected to reformation based upon hindsight as to what might appear to be more advantageous to one of the parties under present circumstances.

I would affirm the judgment of the trial court.

---

7.  *Overson v. United States Fidelity and Guaranty,* Utah, 587 P.2d 149 (1978).

8.  *Hartman v. Potter,* Utah, 596 P.2d 653 (1979).