2008 UT App 465

**Kim S. BLACK, Petitioner, Appellant, and Cross-appellee,**

v.

**Jon Cornell BLACK, Respondent, Appellee, and Cross-appellant.**

**No. 20071014-CA.**

Court of Appeals of Utah.

Dec. 18, 2008.

---

Randy S. Ludlow, Salt Lake City, for Appellant.

Asa E. Kelley, Park City, and Scott W. Hansen, Salt Lake City, for Appellee.

Before GREENWOOD, P.J., McHUGH and ORME, JJ.

## OPINION

McHUGH, Judge:

¶ 1 Kim S. Black (Wife) appeals the trial court's Order terminating alimony retroactively to June 2001, the date when Jon Cornell Black (Husband) filed his first petition to modify the divorce decree to end his alimony obligations (the First Petition).[1] Wife claims that under Utah Code section 30–3–5(10), see Utah Code Ann. § 30–3–5(10) (2007),[2] alimony can be terminated only as of the date cohabitation was established judicially. In the alternative, Wife asserts that if retroactive termination is available, it can relate back only to June 2005 when Husband filed an amended petition that added cohabitation as a ground for termination of alimony (the Amended Petition). Husband cross-appeals, claiming that the trial court should have terminated alimony as of the date cohabitation began. We affirm.

## BACKGROUND

¶ 2 Wife and Husband married on June 7, 1980, and divorced on July 3, 1989. They have one son, who was born in 1982. Throughout the marriage, Husband was disabled. While Wife was acting as Husband's guardian and conservator, Husband failed to file a response to the divorce petition Wife

---

1. Although there was an earlier petition to modify the divorce decree, it is not relevant for purposes of this appeal. We therefore refer to Husband's June 2001 petition to terminate alimony as the First Petition.

2. Despite the fact that section 30–3–5 has been amended since Husband filed his petitions, see Utah Code Ann. § 30–3–5 (2007) (amendment notes), the amendments did not affect the language of the provisions under review in this case. We therefore cite the current version of the code.

filed with the district court. The divorce decree, which was entered by default, awarded Wife monthly alimony of $750.

¶ 3 In June 2001, Husband filed the First Petition to modify the divorce decree to terminate alimony. This First Petition was based on the fact that although Husband and Wife had been married for only nine years, Husband had already paid alimony for twelve years.[3] Thereafter, Husband served Wife with interrogatories and requests for the production of documents. Wife was noncompliant, responding late and incompletely. In addition, Wife's answer to Interrogatory No. 2 was false. Interrogatory No. 2 asked Wife to "[l]ist all persons, if any, who reside with you, giving [his or her] name, age and relationship." Wife responded that only her son lived with her, despite the fact that she had been living with Ted Tomlin since the fall of 2000.

¶ 4 The parties allowed the proceedings to languish until June 2005, when just weeks before trial, Husband filed the Amended Petition seeking to modify the divorce decree on the additional ground of cohabitation, see id.[4] The trial court accepted Husband's Amended Petition and continued the trial date. Subsequently, the court again postponed trial and held Wife in contempt for interference with witnesses. Following trial in November 2007, the court concluded that Wife and Tomlin were cohabitating and terminated alimony retroactively to the date of the First Petition. In so doing, the trial court noted "[t]he general rule ... that the date of the modification of support or alimony is tied to the date that the petition for modification is filed." See generally Utah Code Ann. § 78B–12–112(4) (Supp.2008) ("A child or spousal support payment under a support order may be modified with respect to any period during which a modification is

pending, but only from the date of service of the pleading....").[5]

## ISSUE AND STANDARD OF REVIEW

¶ 5 Wife argues that the trial court incorrectly relied on Utah Code section 78B–12–112(4) when it terminated alimony retroactively to the date of the First Petition. Instead, Wife asserts that section 30–3–5(10) controls this issue because it more specifically relates to the termination of alimony upon the establishment of cohabitation. Compare Utah Code Ann. § 78B–12–112(4), with Utah Code Ann. § 30–3–5(10). Relying on section 30–3–5(10), Wife contends that the trial court erred in terminating alimony retroactively, as opposed to terminating it only with respect to future payments after proof of cohabitation.

¶ 6 Husband likewise asserts that the trial court incorrectly relied upon section 78B–12–112(4) and that section 30–3–5(10) specifically governs the termination of alimony due to cohabitation. Husband's argument diverges from Wife's, however, with respect to the trial court's power to apply the termination of alimony retroactively under section 30–3–5(10). Husband claims section 30–3–5(10) permits termination of alimony retroactively from the date cohabitation is shown to have begun.

¶ 7 We review a trial court's statutory interpretations under a correction of error standard with no deference to the trial court. See Brinkerhoff v. Brinkerhoff, 945 P.2d 113, 115 (Utah Ct.App.1997). "We will interpret a statute according to its plain language, unless such a reading is unreasonably confused, inoperable, or in blatant contravention of the express purpose of the statute.'" Id. at 116 (quoting Perrine v. Kennecott Mining Corp., 911 P.2d 1290, 1292 (Utah 1996)). We also must give effect to the

---

**3.** In 1995, the legislature amended Utah Code section 30–3–5 and created a presumption that the obligation to pay alimony will last no longer than the duration of the marriage, see Revisions of Alimony Standards, ch. 330, § 1, 1995 Utah Laws 1252, 1253; see also Utah Code Ann. § 30–3–5(8)(h).

**4.** Husband asserts that he had just learned of Wife's long-term cohabitation with Tomlin.

**5.** The referenced section is the newly recodified version of former Utah Code section 78–45–9.3(4), the section which was in effect when Husband filed his Amended Petition, see Utah Code Ann. § 78B–12–112 (Supp.2008) (amendment notes). Because the revision made to this provision as part of the recodification has no bearing on our analysis, we refer to the current code for the convenience of the reader.

legislature's use of each word by avoiding interpretations that render any part of the statute superfluous. *See Johansen v. Johansen*, 2002 UT App 75, ¶ 7, 45 P.3d 520.

## ANALYSIS

■ ¶ 8 Utah Code section 30–3–5(10) reads: "Any order of the court that a party pay alimony to a former spouse terminates upon establishment by the party paying alimony that the former spouse is cohabitating with another person." Utah Code Ann. § 30–3–5(10) (2007). We agree with the parties that section 30–3–5(10), unlike section 78B–12–112(4), specifically addresses termination of alimony based on cohabitation. *Compare id., with* Utah Code Ann. § 78B–12–112(4). The plain language of section 30–3–5(10) indicates the legislature's express mandate that the order imposing alimony terminate automatically upon the establishment of cohabitation, thereby eliminating any future alimony obligations. *See* Utah Code Ann. § 30–3–5(10). Even Wife concedes, however, that "section 30–[3–5](10) is silent regarding the court's power to retroactively terminate alimony based on cohabitation." *See generally id.* Consequently, section 30–3–5(10) does not address the issue before us.

¶ 9 Despite the trial court's reliance on section 78B–12–112(4), that section is likewise unhelpful to our analysis. We are unaware of any Utah cases, and the parties have cited none, where section 78B–12–112(4) has been applied to terminate alimony, retroactively or prospectively, on the grounds of cohabitation. We conclude that section 78B–12–112(4) is therefore inapplicable here.

¶ 10 Instead, cohabitation is more like remarriage and death, which are also addressed in section 30–3–5. *See id.* § 30–3–5(9) (terminating alimony automatically upon death or remarriage of former spouse). Although cohabitation, death, and remarriage are addressed in the same section, death and remarriage are in subsection 9, while cohabitation is dealt with in subsection 10. *See id.* § 30–3–5(9)–(10). We believe this distinct treatment evidences the legislature's recognition of the practical differences between termination due to death and remarriage on the one hand, *see id.* § 30–3–5(9),

and termination based upon cohabitation on the other, *see id.* § 30–3–5(10). While the time of a death or remarriage is fixed and easy to establish in the usual case, the establishment of cohabitation is more difficult. The questions of when cohabitation began and when the recipient spouse should have been aware that future alimony payments had been forfeited are often complicated by changing aspects of the recipient spouse's new relationship, difficulties of obtaining proof concerning the sexual nature of that relationship, and affirmative attempts to conceal the relationship from the payor spouse. Section 30–3–5(10), therefore, wisely leaves decisions regarding retroactivity to the trial court.

■ ¶ 11 Trial courts are given broad discretion to address issues related to alimony. *See Despain v. Despain*, 610 P.2d 1303, 1305–06 (Utah 1980) ("In both the formulation of the original decree and any modifications thereof, the trial court is vested with broad discretionary powers, which may be disturbed by an appellate court only in the presence of clear abuse thereof."); *Moon v. Moon*, 1999 UT App 12, ¶ 28, 973 P.2d 431 ("The determination of the trial court that there [has] been a substantial change of circumstances [warranting modification of alimony] ... is presumed valid, and we review the ruling under an abuse of discretion standard." (omission in original) (internal quotation marks omitted)). Section 30–3–5's silence on retroactivity in cases of cohabitation allows the trial court to make decisions concerning the appropriate reach of the termination order based upon the specific facts of each case. We therefore review the trial court's decision to terminate Wife's alimony retroactively in light of that broad discretion.

¶ 12 Here, the imposition of retroactive termination comports with general principles of equity, *see Christensen v. Christensen*, 628 P.2d 1297, 1299 (Utah 1981) ("The modification of divorce decrees is a matter of equity. ..."); *Olsen v. Olsen*, 2007 UT App 296, ¶ 8, 169 P.3d 765 ("In a divorce proceeding, the trial court may make such orders concerning property distribution and alimony as are equitable." (internal quotation marks omitted)), and also with the intent of the

statute, *see Knuteson v. Knuteson,* 619 P.2d 1387, 1389 (Utah 1980) ("[T]he statute [terminating alimony for cohabitation] is and should be directed[ ] to prevent injustice to a spouse who frequently pays through the nose, so to speak, to an undeserving ex-mate."). For nearly five years, Wife concealed her cohabitation from Husband. Wife did not answer Interrogatory No. 2 truthfully, and the trial court found ample credible evidence that Wife engaged in an active cover-up of the cohabitation. Wife was held in contempt for asking witnesses not to speak with her attorney and for attempting to influence the content of their testimony. In addition, the parties' son and daughter-in-law testified at trial that they helped Tomlin move out of Wife's house immediately before the depositions, and daughter-in-law further testified that Wife asked her on a number of occasions to say that Tomlin did not live with Wife. Moreover, Tomlin's sister testified that she and her husband confronted Wife about the impropriety of simultaneously cohabitating with Tomlin and receiving alimony from Husband. Under the egregious facts found by the trial court and not challenged on appeal, we hold that the trial court did not exceed its discretion in terminating alimony retroactively to the date of the First Petition.[6]

¶ 13 Considering the broad discretion given to the trial court in making alimony decisions, we agree that it could have retroactively terminated alimony to the date cohabitation began. We disagree with Husband, however, that the trial court was required to do so. Further, while we recognize that in *Sigg v. Sigg,* 905 P.2d 908 (Utah Ct.App.1995), we affirmed an order that terminated alimony retroactively to the date cohabitation began, *see id.* at 917–18, we find nothing in that decision to mandate reversal here. In *Sigg,* the trial court entered a decree of divorce in 1990, dissolving the marriage and ordering Mr. Sigg to pay alimony to Ms. Sigg. *See id.* at 910, 912. In February 1993, Ms. Sigg and Mr. Haynes began "liv[ing] together as though they were husband and wife." *Id.* at 911

(internal quotation marks omitted). Mr. Sigg learned of the cohabitation and filed a petition to modify the alimony award nine months later. *See id.* Following trial, the court determined Ms. Sigg and Mr. Haynes were in fact cohabiting and ordered termination of the alimony payments to Ms. Sigg as of February 1993 when the cohabitation began. *See id.* at 912. On appeal, this court affirmed the trial court's decision to retroactively terminate alimony to the date of cohabitation. *See id.* at 919. There is nothing in that decision, however, that would require the trial court to terminate alimony retroactively to the date cohabitation began in every case irrespective of the unique factual circumstances at issue.

¶ 14 Husband requests attorney fees incurred at trial and on appeal but sets forth no legal basis for the award. Attorney fees are therefore denied. *See generally* Utah R.App. P. 24(a)(9) ("A party seeking to recover attorney's fees incurred on appeal shall . . . set forth the legal basis for such an award.").

## CONCLUSION

¶ 15 Trial courts, as a general rule, have broad discretion to modify alimony orders, and we conclude that such discretion extends to termination based upon cohabitation. Consequently, we hold that the court here did not exceed its discretion in terminating alimony retroactively to June 2001, the date the First Petition to modify was filed. We therefore affirm the trial court's Order. Husband's request for attorney fees is denied.

¶ 16 WE CONCUR: PAMELA T. GREENWOOD, Presiding Judge and GREGORY K. ORME, Judge.

---

6. Indeed, had Wife's answer to Interrogatory No. 2 been truthful, an amended petition likely would have been filed sooner.